Thank you, Your Honor. Good morning. My name is Ben Coleman. I represent the appellant Artak. Would you lift the microphone a little? Thanks. Artak Ovsepian. Is that better? Yes. My plan was to focus on the first issue, which is what I call the 2B1.6 issue. And to the extent I have time, I'll address the other guideline issues, and I'll watch the clock and try to save a little bit of time. With respect to the 2B1.6 issue, we've made, I guess, two alternative arguments with respect to two different increases. I'm going to first focus on what the pre-sentence report said was the use of an authentication feature or identification document and a two-level increase that applied there. It's our position that based on precedent from several circuits, including the 7th, 8th, and 11th circuits, that that was a mistake. There is a little bit of a dispute about the standard of review here. The government contends it should be plain error. We've urged the court just to use de novo review because the government will not suffer any prejudice and it's a purely legal issue. But even if the court were to use plain error review, we believe the error was plain. And in fact, the 7th Circuit case in Doss found plain error in a very similar circumstance. So it's our position that with respect to that increase, there was just plain obvious error and there should at least be a reversal and a remand for that alone. So, Mr. Coleman, I was having difficulty understanding why exactly the district court applied the enhancement. Because I went through the record, I went through the PSR, and I've been trying to figure out, okay, because I get your double counting argument as a legal matter. I'm trying to see as a factual matter, did the district court actually double count or not? Can you walk us through in the record, you know, PSR, transcript of the sentencing hearing, so that we can actually see what portion of 2B 1.6, I guess back then it was 11 or whatever it was, was actually applied. And then that would help me at least decide whether or not there was double counting. Okay, well, I think we'll start with the pre-sentence report. And that really, I think, is really pretty much the entire record with respect to it. And the But in any event, what the pre-sentence report said, and I don't have it right in front of me right now, is it basically said that the defendants used authentication features and identification documents, that the quote-unquote patients, I'll just call them that, they would present their healthcare identification cards, and they would then use the name and number on those cards to order the prescription medication. And that was the use of the authentication features or identification documents. And that's essentially it. That was what justified the two-level increase. And the double counting is on top of the 24 months, is that it? Correct. Could I ask you a question? And it's something that came up late in my trial preparation, but I don't see, count five is the one that, is it count five that carried the two-year consecutive? I don't see that, and that is healthcare fraud. And in looking at 1028A, I don't see healthcare fraud listed as one of the crimes for which you can impose an additional 24 months. It says any provision contained in Chapter 3 relating to mail, bank, and wire fraud. And in other words, the statute begins whoever during and in relation to any felony enumerated in subsection C gets the 24 months. And there are only two possible provisions. Section four says any provision in this chapter, but count five doesn't allege any provision in this chapter. And then it says any provision contained in Chapter 63 relating to mail, bank, and wire fraud. And I don't see that it says healthcare fraud. Well, certainly that's not an issue that we raise, and I can submit supplemental briefing on that. Well, what I wanted to ask you is, assuming I'm correct, does, as I understand from reading your brief, the double count is dependent on the first count is the 24 months, and then you're saying the guideline double counted. Well, if I'm correct, then there's no double counting. Well, the defendant did receive the two-year consecutive, though. That actually was... I understand that, but that's geared to count five, which is the 1028A violation, and count five is geared to healthcare fraud. Right. Well, if I'm understanding... I have a question about whether this count five even states a crime. Well, that's why I would be happy to submit supplemental briefing on that. I believe the way it was interpreted below was any provision in that chapter, and that's Section 13, I think it's 49, which is the conspiracy provision is in that chapter, but... No, but it's not... It's not bank fraud. It's confusing, because in count five, and the government, in its brief, where it makes essentially a kind of a harmless error point, says that it's count five of the indictment, which is the 1028A count, and it's the healthcare fraud to which the 24 months is pegged. Well, if I'm understanding, we've got... There are two issues here. The first would be... But I just have one question. I don't expect you... I know I'm hitting you with this late, and if I hadn't come out of parliament late myself, maybe we could have asked for additional briefing. But suppose I'm right, does that take care of your double counting argument? Well, I still think there would have to be a reversal. There never... No, but does it take care of your double counting argument? There may have to be a reversal, but I'm just asking you whether or not it takes care of your double counting argument. I don't think so, because the defendant was given a two year consecutive sentence. But the two year consecutive sentence would go out the window if we knocked out count five. Oh, yes. I agree with you. If the two year goes, I'm sorry, and I was being dense. If the two year sentence goes, if the court were to say, listen, we don't even think there should have been a two year consecutive, then yeah, there would be no double counting. Yes, I agree with you on that. Sorry about that. I'm sorry it took so long to get there. So the... Again, if the court would reverse for any reason, and I have a little bit of time left, I don't necessarily think the court has to get to the other issues. I think the proper procedure would be to reverse and remand for an open sentencing, and then the other issues could be addressed on remand. I guess this issue could also, if the court were to agree that there was double counting here, I guess this issue could be raised anew on remand as well. But I certainly would like to take the opportunity to at least submit some supplemental briefing or a 28J letter on this issue, because obviously that would obviate the double counting issue. And certainly you have, obviously, leeway under our rules to do that. Do you wanna save the rest of your time? Yes, please. Thank you. May it please the court. Benjamin Barron for the United States. Why don't we start with Judge Corman's question? Yeah. So what I'd like to do is first, like Your Honor indicated, answer that question and answer Your Honor Judge Owen's question, and then there's some points that I wanna make as well. The answer to Your Honor's question is, my understanding is that provision applies to the entirety of that chapter. It doesn't say that. It says any provision contained in Chapter 63 relating to mail, bank and wire fraud. I understand. So obviously I didn't prepare to address this legal issue, so I wanna submit briefing on it. But my understanding is that a parenthetical like that doesn't define sort of what's covered. That a parenthetical, descriptive parenthetical is only that. It's descriptive and isn't limiting, legally speaking. But again, that's something that I think needs to be further briefed because both parties didn't prepare to address it. And I had one other question that I was just curious about. In order to get the 24 month add on, did you have to charge a 1028A count altogether? Yes. The only way that the two year consecutive sentence applies is if a defendant is convicted under 1028A, which is a separate statute altogether. So I wanna answer Judge Owen's question as well. The object of the conspiracy was submitting billings to Medicare and MediCal, which is done electronically. So the pharmacies would bill Medicare and MediCal through electronic submissions of the means of identification, right? The name and the Medicare MediCal number that would be used to bill. The identification documents and authentication features came in in a separate aspect of the scheme, which was the concealment of the scheme. And that's at government's exit record 129, for example, 128. So in order to... The scheme would have failed if they didn't have patient files that had the identification documents and the Medicare MediCal cards for these conspirators. Not because that was necessary to fraudulently bill, but because that was necessary so that when auditors came knocking on the pharmacy's door, on the clinic's door, they had real patient files and they'd say, look, we actually have identification documents for these patients. These people really filled these prescriptions. And sure enough, the auditor would look at these identification documents and see not just the means of identification, the name and the numbers, but the symbol of the state of California or of the various symbols and logos for Medicare MediCal. And that's because authentication features are separately defined in the statute to be those symbols, holograms, watermarks, whatever it might be, that authenticate documents, that make them appear legitimate. In my view, the language in 2B1.6, Application No. 2 is plain. It says you can't impose an enhancement for the transfer, possession or use of a means of identification. The district court did not do that. It didn't impose the enhancement for the submission of billings to Medicare using the names and account numbers. The identity of that victim enhancement goes to a separate consideration, or the number of victims, I should say, enhancement goes to a separate consideration of the magnitude of the harm. It also says that's because a sentence under this guideline accounts for this factor. Why is that? Because 1028 Big A punishes, and this is a quote, I hope verbatim, for the unlawful use, possession or transfer of a means of identification. You can't get a 1028 Big A conviction based on authentication features, right? If that was what it was charged, it would have been mischarged because an authentication feature is something different. It's a symbol, or a hologram, or a watermark, right? So what the 1028, or what 2B1.6 No. 2 is getting at, it's common sense principle, precluding one-to-one double counting, and that's not what occurred here. I appreciate your argument now on this. I have to say, reading through the PSR and the sentencing transcript, and I understand the double counting thing wasn't raised at sentencing, so I appreciate this is kind of after the fact, and why we may have to apply a plain error review, but I'm not seeing that explanation anywhere. I didn't need to provide the explanation because there was no dispute. That's why plain error is the standard that applies here. If the defendant raised this dispute, I could have provided that explanation, right? But it was the point of item at issue here, authentication feature, or the number of victims, that consideration, is explicitly separate from the mere transfer, use, or possession of a means of identification. And look at the result that the defendant is asking for to drive home that point. The defendant is asking for a four level reduction in the guidelines range, right? Meaning going from a total offense level of 35 to 31, which results in a five to six year reduction, low to high end, in the guidelines range, all to apply a two year consecutive sentence, right? When you look at the plain text again of the statute, 1028A.B.3, Congress explicitly stated, a court shall not in any way reduce the term to be imposed for such crime so as to compensate for, otherwise taken to account, the separate imprisonment under 1028A. So what the defendant is arguing is that the overall sentencing exposure has to be reduced by a total three years, right? Which makes no sense when you look at what the congressional scheme is here. They're trying to punish an additional wrong, additional act of malfeasance, which is not just perpetrating the fraud, but committing identity theft in doing so. But isn't it the same document that had both the identification feature and the so-called authentication feature? In perpetrating the fraud, the object of the offense in this case was not the using the names and the identification numbers, right? The means of identification. The identification documents came into play in a separate layer of the scheme, which is concealment, right? Enabling them to continue to perpetrate it despite auditors coming to investigate the clinic. What the various guidelines enhancements are driving at are considerations that make the offense worse. The number of victims drives at the scope of the offense, right? The loss amount drives at the amount of dollars lost, right? The defendant's argument really applies to loss amount as well, right? The only reason the loss amounts occurred is because the means of identification were used to defraud Medicare and Medi-Cal, right? So why don't we throw loss amounts out the door? What's clear is that what this guidelines range is getting at is not you throw out anything that in any way involves use of means of identification. It's just that common sense point of the one-to-one double counting. You can't enhance for the use of a means of identification because that's a 1028 big A punishes. And I want to address the cases cited by the defendant because they're not on point. Three of those cases involve access devices, credit card numbers, credit cards. Well, the definition of means of identification, the statutory definition, explicitly includes access devices. That's 1028 D7 sub D, right? So those courts were saying, yes, an access device is a type of a means of identification under the definition of this statute, and therefore, the enhancement could not apply. The other case the defendant cites held that an identification document is a type of means of identification, that case contradicts this Court's decision in Dehaney. Therefore, no plain error, where you have two courts that disagree, there cannot be plain error. But in any event, what that court held is that an identification document necessarily contains a means of identification, so it wouldn't draw a distinction between them. But an access device is an entirely different thing. It's a hologram or a symbol, right, or a watermark. And it actually doesn't even have to be contained on a means of identification. The statute includes possessing, like, rubber stamps, right, or machines that imprint access devices as a way that the enhancement applies. And I really have to disagree with the defendant's argument about the standard of review. And after the party submitted the briefing, this Court reached a decision in Joux, 838 F3rd 1007, that's ZHOU, which made clear just how limited this exception for pure questions of law are. First of all, that decision held that where you apply law to fact, it is not a And is that true even if the facts are undisputed? Yes. You are applying the law to the facts. And that is a, by definition, a mixed question. But in any event, what that court held is that it would not apply that discretionary exception for pure questions of law because this Court had traditionally applied plain error to the type of question raised by the defendant. And in Dehaney, that is exactly what this Court did. And I cited other decisions. And in a concurrence to that decision, Judge Graber noted just how limited and actually how limited that exception is, right? Again, it's not a mandatory de novo. It's discretionary. But even then, she said that it really should only apply in civil cases, not in criminal. But that's sort of a – that's besides the point. Kagan. Kagan. Counsel, before you run out of time, I just want to make sure I understand your argument. You basically are arguing that the purpose is underlying 2B1.6 and 2B1.1B11A2 are different, that one, 2B1.6, punishes identity theft, whereas the other punishes criminal evasion and deceit through fraudulent use of authentication features. Is that your argument? That is why the defendant fails if this Court applies a novo review, right, under – but the plain error review applies. And you don't even have to go that far. All you have to do is say the statute separately defines an authentication feature, right, and the number of victims is a separate consideration. No court has ever applied it in this context. And even in the context of identification documents, the precedent is mixed. Therefore, no plain error. But there's also no de novo error on the ground that Your Honor cited. Can I ask you – I'm just curious. How does – this is a criminal case, not a civil case. That's right. I'm sorry. How does that intersect with the defendant's – let's put it this way – an argument that if it's clear, then the defendant's counsel was ineffective for failing to raise it? There's no ineffective assistance claim that's been raised here. I'm not asking you that. I'm saying that we're not dealing in a civil case. And if you have what can be described as plain error – I know it's a multifaceted test, which I hate – but how could – how, if it seems clear that he shouldn't have gotten the two points, and as a result of the failure of counsel to raise the issue, he's going to do what? How many months more? I think my own rough calculation is each point of the guidelines is 10 percent of the sentence. So an extra two, three years in jail because his lawyer didn't raise the issue. And isn't it a jump to take the plain error test, which derives from civil cases, and place it in a criminal case where you have a situation where the failure of counsel affects his constitutional rights? Your Honor, plain error applies in criminal and civil cases. It applies whenever there is an unpreserved claim. I understand that. But what I'm asking you is, suppose it's really plain. How does that – how can we – and it's – how can we ignore the fact that there may be a constitutional violation at issue here? Let me – there are really two answers to that, and I know I'm out of time. I'll be very brief. The first answer is, this Court holds that habeas review is not something that can be addressed on direct review except in very rare circumstances where there's a fully formed record on the issue. And really, there's been nothing to address sort of what the defendant's strategic decision-making was. But in any event, given that there's no precedent on – point on this issue and that these terms are separately defined in the statute, if a defendant could reasonably have concluded that the enhancement applies on that consideration, then that's the case. And actually, the PSR said not only identification features but identification documents trigger the enhancement, and that's exactly what this Court in Dehaney said, that identification document is a separate consideration. Well, then you're – I understand that argument, but then you're arguing that it's just not plain. I mean, if in fact he's right, the argument here is right and the issue wasn't raised by defense counsel, what's the strategic reason? Well, the other answer is that – well, the strategic reason is that he concluded that it would not have been a successful argument and that a defense attorney is entitled to not present an argument. But he's – but you want to prevent him from arguing here that it would have been successful. I'm not preventing anyone from arguing anything. The standard of review is plain error. This Court's case law is clear that where there's no controlling authority on point, there is no plain error, particularly where the closest – most closely analogous authority is mixed, as it is here, at minimum. So the standard of review exists for a very good reason, which is counsel has to raise arguments before the district court, and if they don't, they're reversible only if there's plain error. We don't want an inefficient system where we just keep sending it back whenever a defense counsel comes up with novel claims on appeal. But in any event, 2255 is not an appropriate vehicle in this venue. It's something that could be raised later. When you're talking about 2255, I don't understand the – I don't want to divert you. I don't understand the rule on raising ineffective assistance of counsel claims to be an absolute rule that it automatically has to go back to a 2255 if there's no issue as to its applicability. Look, if the defense counsel raised this argument below, right, I would have had an opportunity to respond. Right. And how would I have responded, right? Not only by pointing out this Court's authority on identification documents. Not only by pointing out what an authentication feature is, but they were actually also forging these people's signatures, right? That's – you can even see that on GER 128, right? These were traction statements where they forged this name and signature of the defendant. They were not just possessing identification documents. They were creating them by scanning them and putting them in the files, right? So they were really doing more than even just possessing or using authentication features and identification documents. They were producing them as well. So there are multiple different respects in which this enhancement applies. The defendant not only didn't object, he conceded that it applies, and there was good reason for him to do so. He was reasonable to do so. That's not even the issue before the Court in this juncture of direct review, but that's just the way it is based on the precedent on this issue. The lack of precedent authentication features and Dehaney explicitly holding that 2B1.6 doesn't apply to identification documents. I mean, that really decides the issue. Of course, that was an unpublished decision. There doesn't have to be a published decision for the defense counsel. I understand that. I'm just asking you a question. That's right. Dehaney is not a published decision. Yes, Your Honor. Therefore, it has no precedential value. It has precedential value. It doesn't have controlling value. And a defense counsel is reasonable in concluding that a three-judge panel reached the right decision when it concluded that the identification document doesn't trigger double counting under 2B1.6. Can I ask you one more just informational question? Yes, Your Honor. How did the judge get to this? What did he actually apply? I know the pre-sentence report adds two points, and then it reaches a level 35. And it seemed to me that for a level 35, the sentence that the judge gave actually was below that. I don't . . . I was just curious as to what did he actually give? The judge gave . . . Did he give a guideline sentence? And then add the two years on, or did he . . . I mean, I have to confess that one way to get around the consecutive sentence on top of the sentence that you would ordinarily give is to depart from the sentence you would ordinarily give. The district court didn't do that, or at least didn't state that. Look, the district court recognized . . . But did he give the guideline sentence? No, he gave the low guideline sentence. That's correct. And by how much? If I may. So the guideline range was 168 to 210. So that's a 14-year low end, and the judge departed downward by one year to 13 years, and then imposed a two-year consecutive mandated by law to 15 years. Well, you're way over, but through no fault of your own. We had a lot of questions for you today. I appreciate it. Thank you, Your Honor. Sure. I want to hit a few things. On the standard of review, the plain error standard, as Your Honor indicated, originated in civil cases. And really, when the Supreme Court converted it over to criminal cases, it was in the context of a conviction and a trial error. And this court, with respect to sentencing errors, has had a much more significant impact in the context of sentencing because, as Your Honor indicates, well, number one, we'd probably just be back here on a 2255 a year or two from now. And number two, you're not unwinding an entire conviction, an entire trial. It doesn't really take a lot to go back for a resentencing hearing if it looks like the defendant got too many points under the guidelines or that he might get a lower sentence and have to serve one, two, three years less than what he did. So there's sort of a relaxed standard in the sentencing context, different from if you're just raising an issue that happened at trial for the first time, and then you'd have to have an entire new trial. On the merits of the issue, the government is essentially, Judge Nelson, to answer your question, they're making the same argument that was rejected by the 7th, the 8th, and the 11 circuits. They're trying to say that an authentication feature is different from a means of identification, and therefore there's no double counting. But what those circuits have all held, and this is post-Dehaney, and they specifically rejected Dehaney and said it was an unpublished opinion with a grand total of one paragraph of analysis, which actually has been rejected by this Court also, subsequent to Dehaney, is that what actually occurred here, are they being punished for the same conduct? An authentication feature can be a means of identification and usually is a means of identification. So we're not going to double punish the exact same conduct over again, and the argument that they're making has already been rejected by those three circuits and published opinions and even on plain error review by the 7th Circuit. They rejected the same argument under plain error review. So even if the Court were to apply plain error review, we think reversal should be required. That's all I have. All right. Thank you, counsel. Thank you very much, counsel, both of you, for your argument. This matter is submitted. We'll move on to the next case.
judges: D.W. Nelson, Owens, Korman